IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Thomas Joseph Coyne, ) | C/A No.: 3:15-3669-JFA-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| South Carolina Secretary of State and ) | |
| South Carolina Republican Party, ) | |
| ) | |
| Defendants. ) | |
| ) | |

In seeking to become President of the United States, Thomas Joseph Coyne ("Plaintiff"), a self-declared financial economist and resident of Ohio, sought to appear as a candidate on the February 2016 South Carolina Republican Primary ballot ("Ballot"). Individuals wishing to appear on the Ballot are required to pay a $40,000 filing fee and sign a party loyalty pledge. Plaintiff seeks injunctive relief from the filing fee and loyalty pledge requirements. He filed this action pro se pursuant to 42 U.S.C. § 1983 against the South Carolina Secretary of State ("SCSOS") and the South Carolina Republican Party ("SCGOP") ("Defendants"), seeking a declaration that the filing fee and loyalty pledge requirements violate his rights under the First, Fourteenth, and Twenty-Fourth Amendments to the United States Constitution. [ECF No. 1].

This matter comes before the court on Plaintiff's motion for preliminary injunction [ECF No. 2], Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim [ECF Nos. 18 and 21], and Plaintiff's motion for summary

judgment [ECF No. 25]. The motions having been fully briefed [ECF Nos. 2, 15, 16, 18, 21, 24, 25, 26, 27, and 31], they are ripe for disposition.

Because Plaintiff is proceeding pro se, pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(e), this case has been referred to the undersigned for all pretrial proceedings. For the reasons that follow, the undersigned recommends the court deny Plaintiff's motion for preliminary injunction, grant Defendant SCSOS's motion to dismiss, deny Defendant SCGOP's motion to dismiss, and deny Plaintiff's motion for summary judgment.

I.      Factual and Procedural Background

Plaintiff filed Statements of Candidacy for President of the United States with the Federal Election Commission on July 27, 2015, and August 27, 2015. [ECF No. 1 at 2]. Plaintiff telephoned the South Carolina State Election Commission ("SCSEC") on September 9, 2015, and was told the filing deadline for the Republican Primary was September 30, 2015.[1] [ECF No. 1 at 2]. Plaintiff was informed that he would be required to sign a pledge of support to the SCGOP and to pay $40,000 to the SCGOP to have his name included on the Ballot. *Id.* at 3. Although he does not allege he was unable to pay the filing fee, Plaintiff declined to pay it and refused to sign the loyalty pledge. [ECF No. 1 at 4].

---

[1] Plaintiff contends the initial filing deadline was November 30, 2015. [ECF No. 1 at 2].

The following day, Plaintiff filed this action.[2] [ECF No. 1]. He alleges Defendants have conspired to violate his rights under the First, Fourteenth, and Twenty-Fourth Amendments.[3] *Id.* He prays for the following relief: (1) a declaration that the $40,000 filing fee is an illegal poll tax in violation of the Fourteenth and Twenty-Fourth Amendments; (2) an order that his name be included on the Republican Primary ballot without requiring the filing fee and loyalty pledge; and (3) an order that he be reimbursed for his court costs and travel expenses from Ohio. [ECF No. 1 at 5–6].

II.     Discussion

    A.     Proper Defendants

As an initial matter, the court must determine whether the SCGOP and SCSOS are proper parties to this action. "When a non-state actor is sued pursuant to 42 U.S.C. § 1983, an initial inquiry asks whether 1) the party engaged in the conduct complained of was acting under color of state law, and 2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States." *Roque "Rocky" De La Fuente v. South Carolina Democratic Party*, No. 3:16-322-CMC, 2016 WL 741317, at *3 (D.S.C. Feb. 25, 2016), citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S.

---

[2] Although Plaintiff's initial filing was labeled "Injunction Emergency/Expedited Motion," the undersigned construed the document as a complaint, as a civil action cannot be commenced without the filing of a complaint. *See* Fed. R. Civ. P. 3. The undersigned found that Plaintiff failed to make a showing sufficient to warrant a temporary restraining order and that his complaint would be liberally construed to also contain a motion for a preliminary injunction. [ECF No. 10 at 1].

[3] Plaintiff has subsequently alleged Defendants violated the Hatch Act, but appears to recognize that he has no private right of action that pertains to the alleged violations. *See* ECF No. 30 at 3.

327 (1986). When political parties "participate in what is part of the state's election machinery, they are election officers of the state de facto if not de jure, and as such must observe the limitations of the constitution." *Rice v. Elmore*, 165 F.2d 387, 391 (4th Cir. 1947).

Plaintiff sues the SCGOP in its role as a "political party" under the South Carolina state law that requires certification of candidates and transmission of their filing fees to the State Election Commission to fund the party primaries. S.C. Code Ann. § 7-11-20. The State Election Commission is authorized to conduct the state's presidential primaries in accordance with the provisions of Title 7 of the South Carolina Code and "party rules." *Id.* The party is required to "verify the qualifications of candidates prior to certifying to the State Election Commission the names of candidates to be placed on primary ballots." *Id.* Specifically, the written certification acknowledges that the candidate meets the qualifications in the United States Constitution, statutory law, and party rules to participate in the primary. *Id.* The statute notes:

> Political parties may charge a certification fee to persons seeking to be candidates in the presidential preference primary for the political party. A filing fee not to exceed twenty thousand dollars, as determined by the State Election Commission, for each candidate certified by a political party must be transmitted by the respective political party to the State Election Commission and must be used for conducting the presidential preference primaries.

*Id.* Thus, it appears Defendant SCGOP is an appropriate defendant in this case. The same cannot be said about Defendant SCSOS.

4

B.     Defendant SCSOS's Motion to Dismiss

Defendant SCSOS seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, alleging it has not been formally served with the complaint and has no oversight or authority over the conduct of elections. [ECF No. 21 at 1]. Plaintiff states Defendant SCSOS should not be allowed to assert this defense because it did not file an answer within the prescribed period. [ECF No. 24 at 2]. He further argues Defendant SCSOS should not be dismissed as a party because "the ministerial duty of SOS is to commission selected governmental appointees by the Governor to positions of power and influence within the State of South Carolina" and that "no person may serve on SCSEC until and unless SOS 'commissions' that person." *Id.* at 3.

The undersigned rejects Plaintiff's argument that Defendant SCSOS has waived its right to seek dismissal under Fed. R. Civ. P. 12(b)(6). Although Plaintiff alleges Defendant SCSOS was required to file a responsive pleading no later than November 15, 2015, Plaintiff bases this argument on a proof of service that is signed by "Cynthia S. Durst" dated September 14, 2015. *See* ECF No. 13. Plaintiff failed to file an affidavit of service with the court, as required by Fed. R. Civ. P. 4(l)(1), and further stated in a cover letter attached to the certified mail receipts that "Defendants received original copies" of the complaint "one day prior to the filing of my complaint." [ECF No. 13-1]. Pursuant to Fed. R. Civ. P. 4(c)(1), "[a] summons must be served with a copy of the complaint." It was impossible for Plaintiff to have properly served Defendant SCSOS on September 14, 2015, because Plaintiff had not yet filed the complaint with the court, which did not issue

a summons until September 15, 2015. *See* ECF No. 11. Plaintiff has failed to submit proof that either Defendant was served with a copy of the summons and complaint.

Independently, a state governmental organization must be served either by delivering a copy of the summons and complaint to its chief executive officer or by serving copies of the summons and complaint "in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under South Carolina law, a state officer or agency must be served by delivering a copy of the summons and complaint to the state officer or agency and by sending a copy of the summons and complaint by registered or certified mail to the South Carolina Attorney General. Rule 4(d)(5), SCRCP. Plaintiff has submitted proof that he mailed a copy of the summons to the SCSOS's office, but he has submitted no proof that he either delivered copies of the summons and complaint to Defendant SCSOS or served them on the Attorney General. Therefore, it does not appear Plaintiff served the SCSOS as required by law. In light of these deficiencies by Plaintiff in serving Defendant SCSOS, the court declines to find Defendant SCSOS's motion was untimely.

Having determined that Defendant SCSOS's motion to dismiss was properly filed, the undersigned now turns to the merits of the motion under Fed. R. Civ. P. 12(b)(6). Defendant SCSOS argues (1) that Plaintiff's complaint alleges no wrongdoing attributable to him or to his office; and (2) that he has no oversight or authority over elections.[4] [ECF No. 21]. The undersigned agrees.

---

[4] Defendant SCSOS notes that Plaintiff may be confusing his office with the SCSEC. [ECF No. 1 at 1 n.1].

1.      Standard on Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs. Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

2.      Analysis of SCSOS's Motion to Dismiss

In his complaint, Plaintiff alleges that he contacted the South Carolina "Elections Commission" on September 9, 2015, and was informed by that agency of the deadline and requirements for inclusion on the Ballot. [ECF No. 1 at 3]. He indicates he was informed by the SCSEC that if he did not sign the loyalty pledge and pay the filing fee, he would not be included on the Ballot. *Id.* at 5. He maintains "SC state government abuses the power and authority of its position" in imposing a poll tax. *Id.* He contends a conspiracy exists between Defendant SCGOP and "SCgov." *Id.* Plaintiff does not allege he interacted with Defendant SCSOS or that Defendant SCSOS has any involvement in

7

the election process. *See generally* ECF No. 1. He vaguely asserts that Defendant SCSOS is a proper party based on the authority to "commission" members of the SCSEC. [ECF No. 24 at 3]. However, the undersigned notes that members of the SCSEC are appointed by the Governor pursuant to S.C. Code Ann. § 7-3-10(a). Defendant SCSOS's official duties are "to monitor positions on the state boards and commissions and any elected or appointed state boards and commissions," "to keep in a public record available for inspection an up-to-date compilation of the membership of the boards and commissions," and to "publicize vacancies, expired terms, and those terms expiring within one year on a semiannual basis statewide." S.C. Code Ann. § 1-5-40.

This court recently dismissed the SCSOS as a defendant in a similar case. While the plaintiff in that case stipulated to the SCSOS's motion to dismiss him as a party, the court stated "[w]hile the Secretary of State has many duties, none of them involve oversight or authority over the conduct of elections in South Carolina." *De La Fuente*, 2016 WL 741317 at *2.

In light of this court's guidance in *De La Fuente*, the South Carolina Code's description of the SCSOS's duties, and Plaintiff's failure to allege any violation of his constitutional rights by Defendant SCSOS, the undersigned recommends Defendant SCSOS be dismissed from this litigation.

   C. Plaintiff's Motion for Preliminary Injunction

Plaintiff alleges Defendants violated the Fourteenth and Twenty-Fourth Amendments by imposing filing fees on candidates who desired to be included on the Ballot. [ECF No. 1 at 2]. He argues the filing fees are poll taxes that prevent voters from

selecting the candidates of their choice. *Id.* He contends the SCGOP's requirement that he sign a loyalty pledge violates his rights under the First Amendment. [ECF No. 1 at 4, 17 at 2]. He alleges a conspiracy exists between the state and the SCGOP to provide funds from filing fees to established South Carolina politicians. [ECF No. 1 at 2, 3, 5]. Plaintiff requested the court grant a preliminary injunction declaring unconstitutional the $40,000 filing fee and pledge of loyalty to the SCGOP and directing that his name be included on the February 20, 2016 Republican Primary ballot.[5]

1.     Standard on Motion for Preliminary Injunction

A party seeking a preliminary injunction must establish all four of the following elements: (a) he is likely to succeed on the merits; (b) he is likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in his favor; and (d) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).[6] A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim. *Winter*, 555 U.S. at 22;

---

[5] The undersigned recognizes that it is impossible for the court to grant the relief Plaintiff requests, as the South Carolina Republican Primary was held in February 2016. However, Plaintiff's motion has not been rendered moot because it is "capable of repetition, yet evading review." *See Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498 (1911).

[6] Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345–47, stating the facts and articulating the standard for the issuance of preliminary injunctions, before remanding it to the district court for consideration in light of *Citizens United*. *See Real Truth About Obama, Inc. v. Fed. Elections Comm'n*, 607 F.3d 355 (4th Cir. 2010).

*Real Truth*, 575 F.3d at 345–46. Similarly, he must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. *Winter*, 555 U.S. at 19–20; *Real Truth*, 575 F.3d at 347. Only then may the court consider whether the balance of equities tips in the party's favor. *See Real Truth*, 575 F.3d at 346–47.[7] Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. *Real Truth*, 575 F.3d at 347 (quoting *Winter*, 555 U.S. at 19–23). "The rationale behind a grant of a preliminary injunction has been explained as preserving the status quo so that a court can render a meaningful decision after a trial on the merits." *Hazardous Waste Treatment Council v. State of S.C.*, 945 F.2d 781, 788 (4th Cir. 1991), citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991). Where the movant "seeks to alter the status quo . . . such '[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances.'" *Perry v. Judd*, 471 F. App'x 219, 223 (4th Cir. 2012), citing *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003).

2.   Analysis of Preliminary Injunction

To determine whether a preliminary injunction is appropriate, the court must weigh Plaintiff's interests against those of the state and the SCGOP. "A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the

---

[7] Based on *Winter*, the *Real Truth* Court expressly rejected and overruled *Blackwelder*'s sliding scale approach that formerly allowed a plaintiff to obtain an injunction with a strong showing of a probability of success even if he demonstrated only a possibility of irreparable harm. *Real Truth*, 575 F.3d at 347; *Winter*, 555 U.S. at 20–22.

plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Tukuski*, 504 U.S. 428, 434 (1992), citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "The [Supreme] Court has recognized that a State has a legitimate interest in regulating the number of candidates on the ballot" to "prevent the clogging of its election machinery, avoid voter confusion, and assure that the winner is the choice of a majority, or at least a strong plurality, of those voting. . . ." *Bullock v. Carter*, 405 U.S. 134, 145 (1972), citing *Jenness v. Fortson*, 403 U.S. 431, 442 (1971); *Williams v. Rhodes*, 393 U.S. 23, 32 (1968). "Moreover, a State has an interest, if not a duty, to protect the integrity of its political process from frivolous or fraudulent candidacies." *Id.*, citing *Jenness*, 403 U.S. at 442.

                a.      Plaintiff's Likelihood of Success on the Merits

                      i.      Loyalty Pledge

Plaintiff argues that Defendant SCGOP's requirement that he pledge his loyalty to the state party violates his right to free speech under the First Amendment. Plaintiff has indicated he was required to "sign a form pledging allegiance to the South Carolina Republican Party" as a condition of inclusion in the South Carolina Republican Primary, but he has neglected to specify how this violates his right to free speech or why he declines to pledge loyalty to the political party for whose candidacy he seeks.

The First Amendment prohibits the government from making laws that abridge the freedom of speech. "[F]or individuals, the choice to speak includes within it the choice of

11

what not to say." *Pacific Gas and Elec. Co. v. Public Utilities Comm'n of California*, 475 U.S. 1, 2 (1986). "Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people." *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 339 (2010), citing *Buckley v. Valeo*, 424 U.S. 1, 19 (1976). "Indeed, the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Cent. Committee*, 489 U.S. 214, 223 (1989), quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971).

Although the First Amendment protects the freedom of speech, it also "protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), citing *Colorado Republican Federal Campaign Comm'n v. Federal Election Comm.*, 518 U.S. 605, 616 (1996). Freedom of association gives political parties the right to "identify the people who constitute the association," *Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 (1981), and "to select a 'standard bearer who best represents the party's ideologies and preferences.'" *Eu*, 489 U.S. at 224, quoting *Ripon Society, Inc. v. National Republican Party*, 525 F.2d 567, 601 (D.C. Cir. 1975). The courts have generally held that "political parties' government, structure, and activities enjoy constitutional protection" and have declined to interfere with those functions. *See id.*, citing *San Francisco County Democratic Central Comm.*, 489 U.S. 214, 230 (1989) (recognizing political parties' "discretion in how to organize itself, conduct its affairs, and select its leaders"). To that end, political parties may restrict their membership to those who support the party's platforms and messages.

12

In the absence of a specific argument from Plaintiff as to the provisions of the party pledge that he considers to violate his right to free speech, and in light of the SCGOP's interest in protecting its right to association, the undersigned finds that Plaintiff would be unlikely to succeed on the merits of his claim.

### ii.    Filing Fee

Plaintiff challenges the $40,000 filing fee as a poll tax. His objection to payment of the filing fee is not based on his inability to pay, but, rather, on his perception as to how the SCGOP distributes the filing fee revenue. [ECF No. 1 at 4].

The Fourteenth Amendment prevents states from depriving "any person within its jurisdiction of the equal protection of the laws." The Twenty-Fourth Amendment states "[t]he right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax." "The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters." *Lubin v. Panish*, 415 U.S. 709 (1974).

Courts have upheld challenges to candidate filing fees in cases where the prospective candidate was indigent or could not afford to pay a filing fee. *See id.*; *Bullock*, 405 U.S. 134. In *Bullock*, the Court "expressly rejected the validity of filing fees as the sole means of determining a candidate's 'seriousness.'" *Id.* at 717. In *Lubin*, the court stated "[f]iling fees, however large, do not, in and of themselves, test the genuineness of a candidacy or the extent of the voter support of an aspirant for public

13

office." *Id.* The Court held "that in the absence of a reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay." *Id.* at 718.

Plaintiff's situation differs from those of the plaintiffs in *Lubin* and *Bullock* because he has not alleged an inability to pay the filing fee, but has instead expressed an unwillingness to do so. Furthermore, Plaintiff's complaint states that the SCGOP does not merely impose a filing fee as a test of a candidate's seriousness, but also requires a loyalty pledge, which Plaintiff was unwilling to execute. In light of Plaintiff's allegations and the relevant case law, the undersigned finds Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims under the Fourteenth and Twenty-Fourth Amendments.

      b.  Irreparable Harm

The court assumes, for the sake of argument, that Plaintiff suffered irreparable harm as a result of his exclusion from the Ballot. However, Plaintiff has not alleged that he was actively campaigning in South Carolina or was likely to win delegates through the South Carolina Republican Primary. Therefore, the court is constrained to find that any harm Plaintiff suffered as a result of his exclusion from the Ballot is nominal.

      c.  Balance of Equities

The balance of equities does not tip in Plaintiff's favor. The state has an interest in regulating the number of candidates on its ballot to ensure the smooth operation of the electoral process. *See Bullock*, 405 U.S. at 145; *Jenness*, 403 U.S. at 442; *Williams*, 393 U.S. at 32. The SCGOP has a legitimate interest in excluding potential candidates who do

not reflect the party's political goals and ideas. *See Timmons*, 520 U.S. at 351; *Colorado Republican Federal Campaign Comm'n*, 518 U.S. at 616. Plaintiff has failed to demonstrate that his principled reasons for declining to sign the party pledge and pay the filing fee outweigh the interests of the state and the SCGOP in regulating the candidates on the Ballot.

                d.     Public Interest

The public interest factor weighs against a preliminary injunction. "The public has an interest in ensuring that the State's primary election is conducted pursuant to state law and that only qualified candidates appear on the ballot." *De La Fuente*, 2016 WL 741317, at *9. Plaintiff has requested that the court alter the status quo, as opposed to maintaining it. He has failed to present evidence to suggest his inclusion on the Ballot outweighs the state's interest in protecting the public from the potential confusion associated with a clogged ballot. *See Bullock v. Carter*, 405 U.S. at 145. Therefore, the undersigned recommends the court deny Plaintiff's motion for preliminary injunction.

      D.     Defendant SCGOP's Motion to Dismiss

Defendant SCGOP argues Plaintiff's claim should be dismissed pursuant Fed. R. Civ. P. 12(b)(6) because he has not cited legal authority to support his claim and has failed to carry his burden in seeking injunctive relief. [ECF No. 18 at 1–2]. Although Defendant SCGOP has presented a compelling argument for denial of the motion for preliminary injunction, the undersigned notes that Plaintiff's failure to meet the burden for obtaining a preliminary injunction does not mean he has failed to state a claim upon

15

which relief may be granted. Instead, it means he has failed to show a need to alter the status quo without a trial on the merits of his allegations.

In *Bullock*, the Court noted the filing fee requirement was "limited to party primary elections, but the mechanism of such elections is the creature of state legislative choice and hence is 'state action' within the meaning of the Fourteenth Amendment." *Bullock*, 405 U.S. at 139. It emphasized that "this power must be exercised in a manner consistent with the Equal Protection Clause of the Fourteenth Amendment." *Id.* The Court found that a state law that prevented potential candidates for public office from seeking the nomination of their party due to their inability to pay a portion of the cost of conducting the primary election was state action that unlawfully discriminated against the excluded candidates and the voters who wished to support them. *Id.* at 859. While the Court specifically indicated the candidates were unable, as opposed to unwilling, to pay the filing fees and acknowledged that "[t]here may well be some rational relationship between a candidate's willingness to pay a filing fee and the seriousness with which he takes his candidacy," the Court did not specifically decide that it was proper for a party to exclude a candidate who was unwilling to pay a filing fee. *See id.* at 146–47. Both the Supreme Court and the Fourth Circuit have emphasized that payment of filing fees is not an adequate measure of the seriousness of a political campaign. *See Lubin*, 415 U.S. at 712–13, 717; *Dixon v. Maryland State Administrative Bd. of Election Laws*, 878 F.2d 776, 784 (4th Cir. 1989). At this stage, Defendant SCGOP has presented insufficient evidence to suggest that the $40,000 filing fee and loyalty pledge are "narrowly drawn"

16

methods for advancing the party's and the state's interests in light of the burden on Plaintiff's rights. *See Dixon*, 878 F.2d at 784.

While the court may ultimately determine that Plaintiff fails to present compelling arguments under the First, Fourteenth, and Twenty-Fourth Amendments, the possibility of such an ultimate outcome does not mean that Plaintiff has failed to state a claim upon which relief may be granted. *See Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248 (4th Cir. 2005) ("Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief," citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). Therefore, the undersigned recommends the court deny Defendant SCGOP's motion to dismiss.

    E.    Plaintiff's Motion for Summary Judgment

        1.    Standard on Motion for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts that show there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

2.     Analysis

Plaintiff seeks summary judgment for the reasons cited in his motion for preliminary injunction and based on Defendant SCSOS's alleged failure to respond in a timely manner. [ECF No. 25 at 1]. He has presented no additional evidence to support his claim. Plaintiff has failed to meet his burden to show that he is entitled to judgment as a matter of law because a genuine dispute of material fact exists as to whether the

SCGOP's ballot access procedures violate his rights under the First, Fourteenth, and Twenty-Fourth Amendments. Therefore, the undersigned recommends the court deny Plaintiff's motion for summary judgment.

III.   Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the court deny Plaintiff's motion for preliminary injunction, grant Defendant SCSOS's motion to dismiss it as a party, deny Defendant SCGOP's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and deny Plaintiff's motion for summary judgment.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 26, 2016                                              Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).